**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| MHG HOTELS, LLC.; JALI, LLC; | ) | |
| HOTELS OF SPEEDWAY, LLC; | ) | |
| HOTELS OF DEERFIELD, LLC; | ) | Case No. 1:20-cv-1620-RLY-TAB |
| MOTELS OF NOBLESVILLE, LLC; | ) | |
| MOTELS OF AVON, LLP; | ) | |
| MOTELS OF FISHERS, LLP; | ) | |
| MOTELS OF INDIANAPOLIS, LLP; | ) | |
| NATVER, LLP; MOTELS OF SEYMOUR, LLP; | ) | |
| SRI-RAM, INC.; SIVA, INC.; HIREN, LLP; | ) | |
| IDM, LLC; MOTELS OF NOBLESVILLE 2, LLP; | ) | |
| NEAL LODGING, LLC; | ) | |
| MOTELS OF NORTH AURORA, LLP; | ) | |
| RANJAN, LLC; MOTELS OF BLOOMINGTON, LLC; | ) | |
| RAVI, LLC; HOTELS OF STAFFORD, LLP; | ) | |
| APPLETREE HOSPITALITY, LLC; | ) | |
| EMERALD HOTELS INVESTMENTS, LLC; | ) | |
| GOURLEY PIKE LODGING, LLC; | ) | |
| HOTELS OF DEERFIELD BEACH, LLC; | ) | |
| MOTELS OF SUGARLAND, LLP | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | *Removed from Marion Superior Court* |
| | ) | *Cause No. 49D06-2005-CT-015059* |
| EMCASCO INSURANCE COMPANY, INC, | ) | |
| and UNION INSURANCE COMPANY OF | ) | |
| PROVIDENCE, INC., | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Defendants, Emcasco Insurance Company, Inc. ("EMC") and Union Insurance Company of Providence, Inc. ("Union") (collectively, "Defendants"), by and through counsel, HeplerBroom LLC, submit this memorandum of law in support of their Motion to Dismiss Plaintiffs' Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b) and state as follows:

Plaintiffs, MHG Hotels, LLC ; JALI, LLC; Hotels of Speedway, LLC; Hotels of Deerfield, LLC; Motels of Noblesville, LLC; Motels of Avon, LLP; Motels of Fishers, LLP; Motels of Indianapolis, LLP; Natver, LLP; Motels of Seymour, LLP; SRI-RAM, INC.; SIVA, INC.; HIREN,

LLP; IDM, LLC; Motels of Noblesville 2, LLP; Neal Lodging, LLC; Motels of North Aurora, LLP; Ranjan, LLC; Motels of Bloomington, LLC; Ravi, LLC; Hotels of Stafford, LLP; Appletree Hospitality, LLC; Emerald Hotel Investments, LLC incorrectly named as Emerald Hotels Investments, LLC; Gourley Pike Lodging, LLC; Hotels of Deerfield, LLC, Hotels of Deerfield Beach, LLC; and Motels of Sugarland, LLP (collectively, "Plaintiffs") are engaged in the business of hotel development and management. Plaintiffs operate various hotel properties located in Illinois, Indiana, Missouri, and Texas. On or about July 23, 2020, Plaintiffs filed their Amended Complaint against Defendants. (Dkt. 11). The Amended Complaint advances causes of action against the Defendants for breach of contract, bad faith, and fraudulent misrepresentation related to the denial of Plaintiffs' claim for alleged business interruption losses due to the implications of COVID-19.

At the most basic level, the current dispute centers on whether the Policy's virus and bacteria exclusion bars Plaintiffs' claim for coverage and, if not, whether Plaintiffs have sustained direct physical loss of or damage to covered property. The question of whether the COVID-19 virus or the governmental orders resulting therefrom have caused businesses to sustain "direct physical loss" is being played out across the country with tribunals clearly concluding that the virus and the governmental edicts do not constitute a "direct physical loss." Significantly, the Policy at issue contains a virus and bacteria exclusion which would negate coverage even if a "direct physical loss" was deemed to have occurred. Defendants' Motion to Dismiss should be granted as the Policy explicitly excludes coverage for Plaintiffs' claimed losses.

## FACTUAL BACKGROUND

Plaintiffs are engaged in the business of hotel development and management and operate hotel properties in Indiana, Illinois, Missouri and Texas. (Dkt. 11, ¶ 6, 8). On or around August 1,

2019, Plaintiffs renewed their Policy with Defendants which provided coverage to Plaintiffs' various business entities as defined within the Policy. (Dkt. 11, ¶ 12, 10). Plaintiffs were insured under two separate Businessowners Policies providing coverage for Plaintiffs' various hotel properties - the Union Insurance Company of Providence, Policy No. 5T4-85-44--20 (Dkt. 11-1) and the Emcasco Insurance Company, Policy No. 5W4-85-44--2 (Dkt. 11-2), (collectively, "Policy"). In relevant part, the Policy states that coverage will be provided "for direct physical loss of or damage to Covered Property…caused or resulting from a Covered Cause of Loss." (Dkt. 11, ¶ 8, Dkt. 11-1, Dkt 11-2). The Policy defines a "Covered Cause of Loss" as "[d]irect physical loss unless the loss is excluded or limited…." *Id*. **The Policy specifically excludes coverage "for loss or damage caused directly or indirectly by…[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."** *Id*. (emphasis added).

Around March 11, 2020, the World Health Organization characterized COVID-19, a respiratory disease causing mild to severe illness, as a pandemic. In response to the pandemic, federal, state and local governmental entities implemented a variety of measures to slow the spread of the virus, including, but not limited to, ordering citizens to "shelter-in-place" and closing all business deemed non-essential ("Executive Orders"). Governmental units across the states including Indiana, Illinois, Missouri and Texas issued Executive Orders placing restrictions on travel and certain business operations. Relevant to the current analysis, Executive Orders issued in Indiana, Illinois, Missouri and Texas specifically provided that hotels and motels were essential businesses and were not required to close for business to the public.[1]

[1] Indiana - On March 6, 2020, Governor Eric Holcomb executed Indiana Executive Order 20-02 declaring a public health disaster emergency exists in Indiana attributable to COVID-19. Pursuant to Executive Order 20-08, hotels and motels, to the extent they are used for lodging and delivery or carryout food services, were deemed essential businesses and not subject to closure under the shelter-in-place order.

Plaintiffs maintain that due to the Executive Orders customers were prevented from traveling to and staying at Plaintiffs' hotels. (Dkt. 11, ¶ 19). Consequently, Plaintiffs submitted a claim to Defendants seeking coverage for their alleged business losses under the Policy. (Dkt. 11, ¶ 22-23). Defendants evaluated the claim and created four separate claim numbers based upon the state where the hotel(s) was physically located (collectively "the Claim"). (Dkt. 11, ¶ 25). On or around April 24, 2020, Plaintiffs' claim was denied and four separate denial letters were issued outlining the investigation and the reasons for denial of each claim.[2] *Id. (See Group Exhibit A, Denial Letters)*. Defendants determined that no claim had been submitted for physical loss of or damage to any covered property, dependent property or nearby property and therefore, there was no covered loss under the Policy. (Dkt. 11, ¶ 25). Defendants further explained that to the extent Plaintiffs' alleged losses were caused by or related to a virus, including but not limited to COVID-19, that induces or is capable of inducing physical distress, illness or disease, such loss or damage is expressly excluded as a covered cause of loss pursuant to the Virus or Bacteria Exclusion. *Id.*

## LEGAL STANDARD ON MOTION TO DISMISS

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. The complaint

---

Illinois - On March 20, 2020, Governor Pritzker executed Illinois COVID-19 Executive Order No. 2020-08 ordering "all individuals currently living within the State of Illinois … to stay at home or at their place of residence" which took effect on March 21, 2020 at 5:00 p.m. Hotels and motels, to the extent they were being used for lodging and delivery or carry-out food services, were exempt from the shelter-in-place order.

Missouri – On March 21, 2020, Kansas City, Missouri Mayor Quinton Lucas executed Second Amdned Order 20-01 ordering Kansas City residents to stay-at-home except to perform essential duties for business. Per the revised order, "[h]otels are considered a residence and may choose to stay open."

Texas – On March 24, 2020, Judge KP George executed the Third Amended Order affecting Fort Bend County – where Plaintiffs' Texas property is located. The Third Amended Order defined hotels and other residential facilities essential retail facilities which were not ordered to cease business.

[2] In deciding a Rule 12(b)(6) motion, a court may consider documents outside the Complaint if they are referred to in the Complaint and are central to plaintiff's claim. *Wright v. Assoc. Ins. Cos. Inc.*, 29 F. 3d 1244, 1248 (7th Cir. 1994).

must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). A plaintiff's responsibility to provide grounds for relief requires more than labels and conclusions. *Airborne Beepers & Video Inc. v. AT&T Mobility,* 499 F.3d 663, 667 (7th Cir. 2007), citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) and *Erickson v. Pardus,* 551 U.S. 89 (2007). The Court must examine the sufficiency of the plaintiff's complaint, not the merits of the lawsuit. *Triad Assocs., Inc. v. Chicago Housing Authority*, 992 F.2d 583, 586 (7th Cir. 1989). When a document contradicts the complaint of which it is part, the document's facts and allegations 'trump' those in the complaint. *Flannery v. Recording Ind. Ass'n of America*, 354 F.3d 632, 638 (7th Cir. 2004).

Generally, when making a 12(b)(6) motion, a party may not use facts or evidence outside of the pleadings to contravene factual allegations contained within a complaint. F.R.C.P. 12(d). "However, exceptions to Rule 12(d) exist, including that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *Stocker v. Exendicare Health Services, Inc.*, 2016 W.L. 4181279, *4 (Aug. 8, 2016 N.D. Ind.) (quoting *188 LLC v. Trinity Indus. Inc.*, 300 F.3d 730, 735 (7th Cir. 2002)).

**ARGUMENT**

Plaintiffs' breach of contact action fails as a matter of law for several reasons. The Policy contains a virus and bacteria exclusion which specifically excludes from coverage losses caused by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." Further, Plaintiffs did not sustain "direct physical loss" as required for coverage under the Policy's terms. Similarly, Count II of Plaintiffs' Amended Complaint alleging bad faith fails as a matter of law as Defendants did not breach the Policy and because Plaintiffs

have failed to adequately advance the cause of action pursuant to *Twombly* and its progeny. Finally, Plaintiffs have failed to properly advance a claim for fraudulent misrepresentation under Federal Rule of Civil Procedure 9(b).

**1. Count I of Plaintiffs' Amended Complaint should be Dismissed**

Plaintiffs' breach of contract action should be dismissed. As an initial dispositive matter, the Policy contains a virus and bacteria exclusion which bars Plaintiffs' claims for coverage. The virus and bacteria exclusion is a complete bar to Plaintiffs' request for coverage regardless of whether the Claim arises from physical loss of or damage to covered property as a result of the presence of COVID-19 or from a government mandated shutdown. The Policy's virus and bacteria exclusion clearly and unambiguously excludes coverage for loss or damage resulting from COVID-19. Even if the Policy did not contain a virus and bacteria exclusion, Plaintiffs did not sustain "direct physical loss of or damage to Covered Property" as required under the Policy's terms for coverage to be extended.

**A. Legal Standard**

It is well established that under Indiana law an insurance policy is a contract between the insurer and the insured and is subject to the same rules of interpretation as other contracts. *Caliber One Indem. Co. v. O & M Const. Co.*, 2004 WL 2538646, at *3 (S.D. Ind. Sept. 29, 2004) (citing *Ind. Funeral Dir. Ins. Trust v. Trustmark Ins. Corp.*, 347 F.3d 652, 654 (7th Cir. 2003)). The interpretation of an insurance policy presents a question of law to be decided by the court. *Tate v. Secura Ins.*, 587 N.E.2d 665, 668 (Ind. 1992). The insured has the initial burden of proving coverage under an insurance policy. *Cincinnati Ins. Co. v. Flanders Elec. Motor Service, Inc.* 40 F.3d 146, 151 (7th Cir. 1994).

The Indiana Supreme Court has held, "[w]here the contract is plain and its meaning clear, the court will not change its evident meaning, by rules of construction, and thereby make a new contract for the parties." *Id.* (citing *Colonial Penn Ins. Co. v. Guzorek,* 690 N.E.2d 664, 669 (Ind. 1997) (quoting *Fireman's Ins. Co. v. Temple Laundry Co.*, 144 N.E. 838, 839 (Ind. 1924)). "If no ambiguity exists, the policy will not be interpreted to provide greater coverage than the parties bargained for." *Id.* (citing *Huntzinger v. Hastings Mut. Ins. Co.*, 143 F.3d 203, 209 (7th Cir. 1998).

**B. Coverage is Expressly Barred by the Virus and Bacteria Exclusion**

The Court should dismiss Plaintiffs' breach of contract claim because the Policy contains a virus and bacteria exclusion which is a complete bar to coverage for Plaintiffs' alleged losses. The virus and bacteria exclusion expressly negates coverage for losses stemming from the "presence of COVID-19 on or around the [] premises." The exclusion applies regardless of whether Plaintiffs sustained what would otherwise be a covered cause of loss through direct physical damage to covered property or losses stemming from governmental edicts.

In relevant part, the Policy excludes from coverage loss or damage caused directly or indirectly by any virus as follows:

> **B. Exclusions**
>
> 1. We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.
>
> * * * * * *
>
> **j. Virus or Bacteria**
>
> (1) Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(Dkt. 11-1, pp. 32-33, 35); (Dkt. 11-2, pp. 48-49, 51).

The virus and bacteria exclusion cited above is applicable to all of Plaintiffs' claims for coverage in this matter. Plaintiffs are seeking coverage under several provisions of Section I – Property of the Policy. Under Section I – Property, coverage is provided "for direct physical loss of or damage to Covered Property…caused by or resulting from any Covered Cause of Loss." (Dkt. 11-1, pp. 16-17). A Covered Cause of Loss is defined as "[d]irect physical loss **unless the loss is excluded or limited under Section I – Property.**" (Dkt. 11-2 pp. 32-33). The exclusions referenced in the previous sentence are found in Section B of Part I of the Policy, which contains the virus and bacteria exclusion. As all of Plaintiffs' claims fall under Section I of the Policy, the virus and bacteria exclusion serves as an absolute bar to coverage.

In examining the history of the virus and bacteria exclusion, it is clear it was meant to exclude from coverage losses caused by or resulting from viruses such as COVID-19. In 2006, the Insurance Services Office ("ISO") developed the virus and bacteria exclusion in response to the global outbreak of SARS. ISO circulated Form CP 01 40 07 06 which contained the language for the exclusion, providing in relevant part:

> *We will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease*

An ISO circular entitled, "*New Endorsements Filed to Address Exclusion of Loss Due to Virus or Bacteria*" ("Circular") accompanied the exclusion form. *ISO Circular, Commercial Property* LI-CF-2006-175 (July 6, 2006). *(See Exhibit B).* The Circular noted that while "property policies have not been a source of recovery for losses involving contamination by disease causing agents" it was likely that insurers may face claims in which there were efforts to expand coverage to create sources of recovery for losses stemming from the specter of pandemic or other unorthodox transmission of disease-causing agents. *Id.* at 2. In response to the concern, ISO developed the

above exclusion to directly exclude from coverage losses or damage resulting from disease causing viruses or bacteria. *Id*. ISO specifically identified SARS as one of the viruses covered by the exclusion, of which COVID-19 is a variant. *Id*. N. Petrosillo, G. Viceconte, O. Ergonul, G. Ippolito, and E. Peterson, Covid-19, SARS and MERS: are they closely related?, Clinical Microbiology and Infection, Volume 26, Issue 6, June 2020, Pages 729-734. *(See Exhibit C).*

Defendants' Policy contains the exact exclusionary language promulgated by ISO to exclude from coverage losses or damages resulting from a virus such as COVID-19. Specifically, the Policy unambiguously and clearly excludes from coverage any loss or damage "caused directly or indirectly…regardless of any other cause or event that contributes concurrently or in any sequence to the loss…whether or not the loss event results in widespread damage or affects a substantial area…[relating to] any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." As identified in the preceding paragraph, and as evidenced by the plain language of the exclusion, the clear intent of the virus and bacteria exclusion is to bar coverage for losses related to viruses such as COVID-19. This exclusion to coverage applies regardless of whether Plaintiffs' alleged losses arise from a physical loss of or damage to covered property as a result of COVID-19 in the business premises or from a government mandated shutdown. As such, Plaintiffs' arguments concerning whether they suffered direct physical loss are moot because the virus and bacteria exclusion clearly excludes the present losses from coverage under the Policy.

Significantly, tribunals around the country construing the exact same virus and bacteria exclusion in relation to recently filed COVID-19 business interruption claims have concluded that the exclusion is an absolute bar to coverage. For example, Judge Draganchuk of Michigan's 30th Circuit Court in the *Gabrilides* case ruled verbally that the virus exclusion contained in Michigan

Insurance Company's property policy barred business interruption coverage to a restaurant that was forced to close via government order *even if the claimants had alleged the virus did cause physical damage to covered property*. *See, e.g.*, *Gavrilides Mgmt. Co. et al. v Michigan Ins. Co.*, Case No. 20-258-CB-C30, Ingham County, MI, July 1, 2020 Hearing, oral ruling available at https://www.youtube.com/watch?v=Dsy4pA5NoPw &feature=youtu.be[2] The virus and bacteria exclusion examined in the *Gavrilides* case was identical to Defendants' exclusion in this matter. *Id.* Likewise, the Court in *Diesel Barbershop et al. v. State Farm Lloyds* concluded "State Farm cannot be held liable to pay business interruption insurance on these claims as there was no direct physical loss, and even if there were direct physical loss, the Virus Exclusion applies to bar Plaintiffs' claims." *Diesel Barbershop, LLC et al. v. State Farm Lloyds,* Case No. 5:20-CV-461-DAE (W.D. Tx. August 13, 2020).

Adding further support, other courts throughout the country have similarly enforced the plain meaning of policy exclusions similar to the exclusion at issue. In *Sentinel Ins. Co., Ltd. v. Monarch Med Spa, Inc.*, the defendants, medical spas providing cosmetic surgery procedures, sought coverage from their insurer for multiple underlying bodily injury claims arising from patient exposure to Group A Streptococcus bacteria. 105 F. Supp.3d 464, 466 (E.D. Penn. 2015). The Court held that the bacteria exclusion in the policy was valid and that the insurer did not have to defend or indemnify the insureds in the actions. *Id.* "As the parties negotiated and presumably paid for, a fungi bacteria virus exclusion, these exclusions bar coverage…" *Id.* at 472. In *Alexis v. Southwood L.P.*, the court affirmed summary judgment for the insurer, holding that a "communicable disease exclusion" barred coverage for diseases transmitted from exposure to raw sewage. *Alexis v. Southwood L.P*, 792 So. 2d 100, 102 (La. App. 2001).

In the present matter, the Policy's virus and bacteria exclusion is clear and unambiguous, excluding coverage for Plaintiffs' claims on its face. As alleged in the Amended Complaint, Plaintiffs' losses arise from the "presence of COVID-19 on or around Plaintiffs' premises" which is exactly the type of loss excluded by the virus and bacteria exclusion. (Dkt. 11, ¶ 20). The Policy's virus exclusion bars coverage for Plaintiffs' alleged losses regardless of whether the alleged losses arise from a physical loss of or damage to covered property as a result of COVID-19 or from a government mandated shutdown. Defendants' Motion to Dismiss Count I of Plaintiffs' Amended Complaint should be granted.

**C. Even Disregarding the Virus Exclusion, Plaintiffs have not Alleged a Covered Loss under the Policy**

Regardless of whether the virus and bacteria exclusion is present, Plaintiffs' claim is not covered under the Policy as Plaintiffs have not alleged a "direct physical loss" to covered property. The Policy's definition of a covered loss would exclude Plaintiffs' alleged business losses resulting from COVID-19 or the Executive Orders resulting therefrom. In relevant part, the Policy provides:

> **A. Coverage**
> We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.
>
> **3. Covered Causes of Loss**
> Direct physical loss unless the loss is excluded or limited under Section I – Property.

(Dkt. 11-1, pp. 16-17; Dkt. 11-2 pp. 32-33)

The Policy further provides Additional Coverages for "Business Income" and "Extra Expense" as follows:

> **5. Additional Coverages**

* * * * * *

**f. Business Income**

**(1) Business Income**

> **(a)** We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration". The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss…..
>
> **(b)** We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage….

**(2) Extended Business Income**

> **(a)** If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during that period that…
>
> **(b)** Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(Dkt. 11-1, pp. 21-22; Dkt. 11-2, pp. 37-38)

The term "period of restoration" is defined in the Policy as the period of time that:

**(1)** Begins:

(a) 72 hours after the time of direct physical loss or damage for Business Income Coverage; or

(b) Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

caused by or resulting from any Covered Cause of loss at the described premises; and

**(2)** Ends on the earlier of:

(a) The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality, or

(b) The date when business is resumed at a new permanent location.

(Dkt. 11-1, pp. 48-49; Dkt. 11-2, pp. 64-65)

**g. Extra Expense**

(1) We will pay necessary Extra Expense you will incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss….

(2) Extra Expense means expense incurred:

(a) To avoid or minimize the suspension of business and to continue "operations"…

(b) To minimize the suspension of business if you cannot continue "operations".

* * * * * *

(4) We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage. This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

(Dkt. 11-1, pp. 23; Dkt. 11-2, pp. 39)

Per a plain reading of the Policy's terms, Plaintiffs' failed to advance a valid claim to recover business interruption or extra expenses payments. The Business Income and Extra Expense provisions of the Policy cover loss of business income and extra expenses sustained due to a suspension of the insureds' operations **only if that suspension is caused by a "direct physical loss of or damage to covered property at the described premises**…caused by or resulting from any Covered Cause of Loss." The Policy defines a "Covered Cause of Loss" as a direct physical

loss. There is no coverage under the Policy for Plaintiffs' claim because Plaintiffs do not allege a direct physical loss to covered property.

As stated above, a court will apply the plain meaning of the terms contained in a policy of insurance and not extend coverage beyond the terms agreed upon by the parties. Per the Policy, Plaintiffs did not sustain a covered cause of loss unless they experienced a "direct physical loss." "In ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstratable, and physical alteration' of its structure." *Port Auth. Of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3rd Cir. 2002) quoting 10 *Couch On Insurance* § 148.46 (3d Ed. 1998). With respect to the phrase "direct physical loss," the Seventh Circuit held that an insurer is required to replace or pay to replace covered property that suffered a "direct physical loss"—i.e., property that has been damaged. *Windridge of Naperville Condominium Association v. Philadelphia Indemnity Insurance Company,* 932. F. 3d 1035, 1040 (7th Cir. 2019). In *Windridge*, the Court explained that the term "direct" is meant to exclude situations in which an intervening force plays some role in the damage. *Id*. Further, "physical" generally refers to tangible as opposed to intangible damage. *Id.*

Courts have generally interpreted direct physical loss or damage as the actual destruction of property, affecting its structural integrity or its function. "Courts have rejected coverage when a business's closure was not due to direct physical harm to the insured premises." *Rose's 1, LLc, et al. v. Erie Insurance Exchange*, Civil Case No. 2020 CA 002424 B (D.C. 2020). For example, in *Mama Jo's Inc. v. Sparta Insurance Company*, the insured sought coverage for losses it sustained when it was required to undergo extensive mitigation to remove dust, debris and potentially toxic chemicals deposited in its restaurant by nearby construction work. 2018 WL 3412974 (S.D. FL. June 11, 2019,). The Court concluded that there was not "direct physical loss"

under the Policy and therefore no coverage, finding that a 'direct physical loss' contemplates an actual change in insured property then in a satisfactory state…requiring that repairs be made to make it [satisfactory for future use.]." *Id*. at *9. "[W]here 'the structure continues to function – it has not lost its utility…routine maintenance does not bring the expense within first-party coverage.'" *Id*. (quoting *Port Auth. Of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 236 (3rd Cir. 2002) (presence of asbestos in building was not "physical loss" because building owner could not show real or imminent "contamination of the property such that its function is nearly eliminated or destroyed, or the structure is made useless or uninhabitable"). In recently upholding the trial Court's grant of summary judgment in the insurer's favor, the Eleventh Circuit concluded that "an item or structure that merely needs to be cleaned has not suffered a 'loss' which is both 'direct' and 'physical.'" *Mama Jo's Inc. v. Sparta Insurance Company*, 2020 WL 4782369, *8 (August 18, 2020 11th Cir.); *see also Mastellone v. Lightning Rod Mut. Ins. Co.*, 884, N.E. 2d 1130, 1144 (Ohio Ct. App. 2008) (holding that mold does not constitute "physical damage" because "[t]he presence of surface mold did not alter or affect the structural integrity of the [property]"); *Newman Myers Kreines Gross Harris, P.C. v. Great Northern Ins. Co.*, 17 F.Supp.3d 323, 331 (S.D.N.Y 2014) (holding that the policy language "direct physical loss or damage" requires some sort of actual, physical damage to the insured premises to trigger loss of business income and extra expense coverage); *Universal Image Productions, Inc. v. Chubb Corp*., 703 F.Supp.2d 705, 709 (E.D. Mich. 2010) (holding that intangible harms like strong odors and presence of mold/bacteria did not alter the structural integrity of property and were not a "direct physical loss[es]"; *Universal Image Productions, Inc. v. Fed. Ins. Co.*, 475 Fed.Appx. 569, 575 (6th Cir. 2012) (requirement of "direct physical loss or damage" not met where presence of bacteria in air conditioning system did not cause tangible damage to insured premises)).

The interpretation of "physical" in the above referenced cases is consistent with recent rulings that the presence of COVID-19 in the business premises and/or the government mandated shutdown orders do not satisfy the physical loss or damage requirement. In *Gavrilides,* a restaurant was forced to cease business operations as a result of a COVID-19 shelter-in-place order. The restaurant sought coverage for its resulting loss of business income. In analyzing the applicable policy, the court determined that the policy extended coverage for loss of business income caused by a suspension in operations **only if the suspension was caused by direct physical loss or damage**. In concluding that there was no direct physical loss or damage, the Court observed that direct physical loss of or damage to the property "has to be something with material existence. Something that is tangible. Something…that alters the physical integrity of the property." The court reasoned that the complaint did not allege any physical loss of or damage to the insured premises. It merely alleged loss of business due to executive orders shutting down dining in restaurants due to COVID-19, which was not a covered loss under the policy's terms.

In another recent case, *Social Life Magazine v. Sentinel Ins. Co.,* the district court for the Southern District of New York denied a motion for preliminary injunction requested by a magazine publisher to force its insurer to pay for financial losses caused by a coronavirus closure order. *Social Life Magazine, Inc.*, 1:20-cv-03311-VEC (S.D.N.Y.), ECF No. 24-1 at p. 15. The court reasoned that business interruption coverage is not triggered because physical damage has not prevented the policyholder from entering the property. *Id.* The court concluded that the virus damages lungs; not printing presses. *Id.* at 5. "New York law is clear that this kind of business interruption needs some damage to the property[.]" *Id* at 15. Thus, it is apparent that COVID-19 does not cause direct physical loss because it does not cause actual, tangible, and/or physical alteration of property.

In the present action, Plaintiffs claim that the presence of COVID-19 on or around their business premises, and/or the threat thereof, has rendered the premises unsafe and unfit for their intended use and that constitutes physical damage or loss. Similar to the above cases, Plaintiffs have not suffered a direct physical loss prompting coverage under the Policy. Plaintiffs have not alleged any physical alteration or change in structure to their business property that would require any sort of repair. Further, Plaintiff were never ordered to close their businesses. Defendants again note that the virus and bacteria exclusion bars coverage for Plaintiffs' claim regardless of whether the Court determines Plaintiffs have put forth sufficient factual allegations to potentially support a claim for direct physical loss or damage. Even setting aside the exclusion, however, Plaintiffs have not alleged a covered loss under the Policy and their breach of contract claim should be dismissed.

**D. There is No Coverage under the Civil Authority Provision**

Similar to the above, no coverage is provided under the Civil Authority Coverage provision as direct physical loss is required to prompt coverage. In relevant part, the Policy provides,

> **i. Civil Authority**
> When a **Covered Cause of Loss** causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> (2) The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Dkt. 11-1, p. 24; Dkt. 11-2, p. 40)(emphasis added).

Consistent with the business income provisions outlined above, the Policy's Civil Authority provision applies only if there is a "Covered Cause of Loss" which is clearly defined as direct physical loss to covered property. Under the plain terms of the Policy's Civil Authority provision, there is no coverage unless there is "**direct physical loss**" to property other than the insured premises and an action of civil authority prohibits access to the insured's premises as a result. Neither of these requirements for coverage exist in the present matter.

**i. COVID-19 did not cause a direct physical loss to other properties**

As fully outlined in the previous section, the presence of COVID-19 and the Executive Orders stemming therefrom are not a **direct physical loss** which is required for coverage under the Civil Authority provision. Plaintiffs do not allege in their Amended Complaint that there was any damage to other property caused by a "Covered Cause of Loss." There was no "direct physical loss" to any property, either the insureds' property or the property of others. The Amended Complaint does not allege facts showing any direct physical loss, i.e., physical change or alteration to any property at all. Direct physical loss to property other than property at Plaintiffs' premises is necessary for Civil Authority coverage. Because there was no direct physical loss to any property, coverage under the Civil Authority provision does not apply.

**ii. Access to Plaintiffs' premises was not prohibited by Civil Authority**

The Civil Authority provision also requires that access to Plaintiffs' premises be prohibited by an order of a civil authority. The very Executive Orders that Plaintiffs reference in their Amended Complaint establish that Plaintiffs' hotels and motels were deemed essential businesses and never ordered to close. The Executive Orders expressly allowed access to the Plaintiffs' premises and operations were encouraged as hotels and motels were deemed essential. Since

access to Plaintiffs' premises was not prohibited by civil authority, there is no Civil Authority coverage under the Policy.

This position has been established in tribunals nationally. In *54th St. Ltd. Partners, L.P. v. Fid. & Guar. Ins. Co.*, the Court held that there was no coverage where "vehicular and pedestrian traffic in the area was diverted, [but] access to the restaurant was not denied; the restaurant was accessible to the public, plaintiffs' employees and its vendors." 306 A.D.2d 67 (N.Y. App. Div. 2003). In *Southern Hospitality, Inc. v. Zurich Am. Ins. Co.*, 393 F.3d 1137 (10th Cir. 2004), the plaintiff managed a number of hotels and its revenues and profits plummeted when the FAA grounded all flights in the United States following 9/11. *S. Hosp., Inc.*, 393 F.3d at 1138. The Court held that there was no coverage under the policy's civil authority provision because the orders prohibited flights, not access to hotels. *Id.* at 1140. "[L]osses due to curfew and other such restrictions are not generally recoverable…If a policy provides for business interruption coverage where access to an insured's property is denied by order of civil authority, access to the property must actually be specifically prohibited by civil order, not just made more difficult or less desirable." 11A *Couch on Ins.* § 167:15; *Syufy Enters v. Home Ins. Co. of Ind.*, 1995 WL 129229, *2 (N.D. Cal. Mar. 21, 1995) (riot-related curfew prevented insured's customers from being outside, it did not prohibit access to the insured's premises); *Bros., Inc. v. Liberty Mut. Fire Ins. Co.*, 268 A.2d 611, 614 (D.C. 1970) (same).

In the present action, Plaintiffs have not alleged a direct physical loss to covered property and access to Plaintiffs' business was never prohibited by any governmental action. Further, coverage under the Civil Authority provision is excluded by the virus and bacteria exclusion even if Plaintiffs sufficiently plead the required elements. Therefore, coverage does not exist under the Civil Authority provision and Defendants' motion to dismiss should be granted.

**2. Count II of Plaintiffs' Amended Complaint should be Dismissed**

Plaintiffs' cause of action for bad faith should be dismissed. Under Indiana law, an insured may recover for the tort of bad faith upon a showing that the insurer engaged in practices such as: (1) making an unfounded refusal to pay policy proceeds; (2) causing an unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any unfair advantage to pressure an insured into a settlement of his claim." *Family Christian World Inc. v. Philadelphia Indem. Ins. Co.*, 2015 WL 6394476, *5 (N.D. Ind. Oct. 21, 2015). "[A] good faith dispute about the amount of a valid claim or about whether the insured has a valid claim at all will not supply the grounds for a recovery in tort for the breach of the obligation to exercise good faith. This is so even if it is ultimately determined that the insurer breached the contract." *Erie Ins. Co. v. Hickman*, 622 N.E.2d 515, 520 (Ind. 1993). "That insurance companies may, in good faith, dispute claims, has long been the rule in Indiana." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 524 (7th Cir. 2008) (quoting *Erie Ins.*, 322 N.E.2d at 520). There is little question that it is difficult for the insured plaintiff to prove bad faith. *Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37 (Ind. 2002).

An insured "must plead allegations beyond just a simple breach of contract based on an erroneous denial of an insurance claim in order to sufficiently plead a claim for insurance bad faith." *H.E. McGonigal Inc. v. Harleysville Lake States Inc. Co.*, 2015 WL 6459129, *2 (S.D. Ind. Oct. 26, 2015). "In order to pass muster under Rule 12(b)(6) standard, a complaint must allege facts that are 'enough to raise a right to relief above the speculative level.'" *Family Christian World Inc. v. Philadelphia Indem. Ins. Co.*, 2015 WL 6394476, *6 (N.D. Ind. Oct. 21, 2015). The allegations contained in Plaintiff's Complaint fail to meet the pleading standard enunciated in

*Twombly* and *Iqbal* or set forth the elements necessary to establish a bad faith claim under *Erie* and its progeny. *Id*.

### A. Plaintiffs' Bad Faith Count should be Dismissed because Defendants made a Reasonable and Correct Decision on Plaintiffs' Claim

As an initial matter, Defendants correctly concluded that no coverage existed under the Policy for Plaintiffs' claim. As Defendants made a reasonable and correct decision regarding coverage, Plaintiffs' claim for bad faith fails. "[T]o determine whether [the insurer] breached the covenant of good faith and fair dealing necessarily requires that the factfinder determine whether it wrongfully denied coverage". *HemoCleanse, Inc. . Philadelphia Indem. Ins. Co.*, 831 N.E.2d 259, 264-65 (Ind. Ct. App. 2005). To date, no Indiana court has determined an insurer violated its duty of good faith and fair dealing when a correct claims decision was made. As Defendants made the correct decision not to extend coverage, Plaintiffs' claim necessarily fails.

Moreover, Plaintiffs' bad faith claim should be dismissed because the Indiana Supreme Court has explicitly refused to recognize a claim for bad faith claims handling. *Monroe Guaranty Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 976 (Ind. 2005) (express rejection of argument that an insurer may exhibit bad faith in its handling of a claim). *See also*, *Telamon Corp. v. Charter Oak Fire Ins. Co.*, 179 F.supp.3d 851, 856 (S.D. Ind. 2016) ("neither the Indiana Supreme Court nor the Indiana Court of Appeals has recognized a claim for bad faith claims handling"), affirmed *Telamon Corp. v. Charter Oak Fire Ins. Co.*, 850 F.3d 866, 872 (7th Cir. 2017) (Court declined to certify to Indiana Supreme Court question of whether lack of good faith claim included claim handling); *Dennerline v. Pronational Ins. Co.*, 2006 WL 1344059, *2 (S.D. Ind. May 16, 2006) ("Indiana Supreme Court has not recognized bad faith handling of a claim or expanded the obligations that it set forth in *Hickman*."); *Smith v. Nationwide Affinity Ins. Co.*, 2017 WL 3720201, *5 (N.D. Ind. August 28, 2017); *Accident Fund Ins. Co. of America v. Custom*

*Mechanical Construction, Inc.*, 2018 WL 419988, *5 (S.D. Ind. January 16, 2018) ("[nor does it seem wise to charter new bad faith waters especially given that the Indiana Supreme Court has not expanded *Hickman* in the past 20 years."). Count II of Plaintiffs' Amended Complaint should be dismissed.

**B. Plaintiffs Failed to Sufficiently Plead a Cause of Action for Bad Faith**

To meet the high standard for establishing bad faith, a complaint "must go beyond mere labels and conclusions, and must be enough to raise a right to relief above the speculative level." *G&S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 537 (7th Cir. 2012). Plaintiffs aver that Defendants failed to act in good faith by denying Plaintiffs' request for coverage without conducting a reasonable and adequate investigation of Plaintiffs' claim. However, Plaintiffs fail to allege facts as to why the investigation was not reasonable or adequate. Count II fails to allege the basis for Defendants' denial of coverage, let alone facts explaining why that denial was unfounded. Plaintiffs attempt to make an argument that Defendants' lack of investigation is evidenced by its denial letter, but no facts are alleged in support of this argument nor do Plaintiffs attach the referenced denial letters. Count II merely recites the elements of a bad faith cause of action as set forth in *Erie Insurance Co. v. Hickman*, 622 N.E.2d 515, 519 (Ind. 1993).

Barebones pleading of a bad faith claim is insufficient to state a cause of action. *Rocky Top at Mission Hills LLC v. Travelers Indemnity Company of America*, 2016 WL 7116143 (S.D. Ind. Nov. 2, 2016). In *Rocky Top*, for example, the insured simply pled the elements of a breach of contract claim and added that the insurer "violated the Indiana Unfair Claims Settlement Practices Act which was evidence of bad faith" and "made an unfounded refusal to pay a covered claim; deceived the Plaintiff; and/or made an unfounded delay in paying policy proceeds." *Id.* at *2. The Court dismissed the complaint because there were no factual allegations to explain how the insurer

violated the Act or that would raise an inference that the insurer knew there was no legitimate basis for denying coverage. Here, Plaintiffs fail to include any factual allegations to raise an inference that Defendants knew there was no legitimate basis for denying coverage or any factual allegations as to how Defendants improperly investigated the claim. Indeed, as set forth above, the denial did not merely have a legitimate basis but was correct as a matter of law.

Along with failing to sufficiently plead the objective element of a bad faith claim, Plaintiffs have wholly failed to allege that Defendants' denial of its claims was the result of a culpable state of mind. In Indiana, a "bad faith claim is composed of an objective element (such as the lack of a reasonable basis to deny a claim) and a subjective element (such as knowledge of the lack of a reasonable basis to deny a claim). *Clifford v. State Farm Fire and Cas. Ins. Co.*, 2011 WL 2326969, *14 (N.D. Ind. June 7, 2011). Failure to plead the insurer acted with the requisite culpable state of mind is fatal to Plaintiffs' Complaint as a matter of law. *See Family Christian World Inc. v. Philadelphia Indem. Ins. Co.*, 2015 WL 6394476, *6 (N.D. Ind. Oct. 21, 2015). Again, authority from this jurisdiction supports the conclusion that a complaint for bad faith that fails to allege the subjective element fails on its face. In *Family Christian World Inc.*, the court dismissed a bad faith claim premised upon "conclusory allegations that lack sufficient factual support evidencing the type of dishonest purpose, moral obliquity, furtive design, or ill will necessary to sustain such a claim." *Id.* at 8. Likewise, in *Telamon Corporation*, the court dismissed bad faith claims which "did not allege Defendants acted with a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will." 179 F.Supp.3d 851, 857 (S.D. Ind. 2016).

Like the objective elements, Plaintiffs simply allege that Defendants denied their claim with a culpable state of mind without providing any factual basis for the allegations. Specifically,

Plaintiffs allege that the claims decision was made "with malice, fraud, gross negligence and oppressiveness" without providing a factual basis to support the allegations. As Plaintiffs have failed to plead sufficient factual background in support of their bad faith claim, dismissal is appropriate under F.R.C.P. 12(b)(6).

**3. Count III of Plaintiffs' Amended Complaint should be Dismissed**

To succeed on a claim for fraudulent misrepresentation, a plaintiff is required to establish a (i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury. *Johnson v. Wysocki*, 990 N.E. 2d 456, 460-61 (Ind. 2013). Federal Rule of Civil Procedure 9(b) creates a heightened pleading standard for fraud claims, and requires that a party must state with particularity the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). Count III of the Amended Complaint does not meet the heightened pleading standards of Fed. R. Civ. P. 9(b). Count III lacks the identity of the person making the alleged misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the Plaintiffs. Absent any facts to sustain a claim for fraudulent misrepresentation, Count III of the Amended Complaint fails to state a claim upon which relief can be granted.

**<u>CONCLUSION</u>**

WHEREFORE, Defendants, Union and EMC, respectfully request that this Honorable Court enter an order dismissing Plaintiffs' First Amended Complaint against them and for any other relief this Court deems necessary and proper.

Respectfully submitted,

HEPLERBROOM, LLC

/s/ Justin Curtis

Rick Hammond, #19044-45
Justin K. Curtis, #28517-45
Eman Z. Senteno, #33872-45
2929 Carlson Drive, #304
Hammond, Indiana 46323
(219) 427-5562
(219) 200-3305 (fax)
rick.hammond@heplerbroom.com
justin.curtis@heplerbroom.com
eman.senteno@heplerbroom.com
***Attorneys for Defendants***

**PROOF OF SERVICE**

I hereby certify that on August 24, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing(s) to the following:

Andrew M. Lehmann, Attorney No. 31151-06
1220 Brookville Way
Indianapolis, IN 46239
317-356-4000
alehmann@mhghotelsllc.com
*Attorney for Plaintiffs MHG Hotels, LLC*

/s/ Justin Curtis
Rick Hammond, #19044-45
Justin K. Curtis, #28517-45
Eman Z. Senteno, #33872-45
2929 Carlson Drive, #304
Hammond, Indiana 46323
(219) 427-5562
(219) 200-3305 (fax)
rick.hammond@heplerbroom.com
justin.curtis@heplerbroom.com
eman.senteno@heplerbroom.com
***Attorneys for Defendants***