UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MHG HOTELS, LLC, | ) | |
| JALI, LLC, | ) | |
| HOTELS OF SPEEDWAY, LLC, | ) | |
| HOTELS OF DEERFIELD, LLC, | ) | |
| MOTELS OF NOBLESVILLE, LLC, | ) | |
| MOTELS OF AVON, LLP, | ) | |
| MOTELS OF FISHERS, LLP, | ) | |
| MOTELS OF INDIANAPOLIS, LLP, | ) | |
| NATVER, LLP, | ) | |
| MOTELS OF SEYMOUR, LLP, | ) | |
| SRI-RAM, INC., | ) | |
| SIVA, INC., | ) | No. 1:20-cv-01620-RLY-TAB |
| HIREN, LLP, | ) | |
| IDM, LLC, | ) | |
| MOTELS OF NOBLESVILLE 2, LLP, | ) | |
| NEAL LODGING, LLC, | ) | |
| MOTELS OF NORTH AURORA, LLP, | ) | |
| RANJAN, LLC, | ) | |
| MOTELS OF BLOOMINGTON, LLC, | ) | |
| RAVI, LLC, | ) | |
| HOTELS OF STAFFORD, LLP, | ) | |
| APPLETREE HOSPITALITY, LLC, | ) | |
| EMERALD HOTEL INVESTMENTS, LLC, | ) | |
| GOURLEY PIKE LODGING, LLC, | ) | |
| HOTELS OF DEERFIELD BEACH, LLC, | ) | |
| and | ) | |
| MOTELS OF SUGARLAND, LLP, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMCASCO INSURANCE COMPANY, INC. | ) | |
| and | ) | |
| UNION INSURANCE COMPANY OF | ) | |
| PROVIDENCE, INC., | ) | |
| | ) | |
| | ) | |

1

Defendants.                    )

## ENTRY ON DEFENDANTS' MOTION TO DISMISS

On July 23, 2020, the Plaintiffs herein, MHG, Hotels, LLC; JALI, LLC; Hotels of Speedway, LLC; Hotels of Deerfield, LLC; Motels of Noblesville, LLC; Motels of Avon, LLP; Motels of Fishers, LLP; Motels of Indianapolis, LLP; Natver, LLP; Motels of Seymour, LLP; SRI-RAM, Inc.; SIVA, Inc.; HIREN, LLP; IDM, LLC; Motels of Noblesville 2, LLP; Neal Lodging, LLC; Motels of North Aurora, LLP; Ranjan, LLC; Motels of Bloomington, LLC; Ravi, LLC; Hotels of Stafford, LLP; Appletree Hospitality, LLC; Emerald Hotel Investments, LLC; Gourley Pike Lodging, LLC; Hotels of Deerfield Beach, LLC; and Motels of Sugarland, LLP, filed an Amended Complaint against Defendants, Emcasco Insurance Company, Inc. and Union Insurance Company of Providence, Inc., for breach of contract, bad faith, and fraudulent misrepresentation arising out of the denial of Plaintiffs' March 23, 2020 claim for alleged business interruption losses.  Defendants now move to dismiss Plaintiffs' Complaint under Federal Rule of Civil Procedure 12(b)(6).  The court, having read and reviewed the parties' submissions and the applicable law, now **GRANTS** Defendants' motion.

## I.    Dismissal Standard

Federal Rule of Civil Procedure 12(b)(6) permits the court to dismiss a complaint for failure to state a claim upon which relief may be granted.  When ruling on a motion to dismiss, the court may consider, in addition to the allegations set forth in the complaint itself, "documents that are attached to the complaint, documents that are central to the

complaint and referred to in it, and information that is properly subject to judicial notice."

*Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013).  To survive, the "complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is

plausible on its face."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007); *see*

*Independent Trust Corp. v. Stewart Info, Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)

("The complaint 'must actually *suggest* that the plaintiff has a right to relief, by providing

allegations that raise a right to relief above the speculative level.'") (quoting *Windy City*

*Metal Fabricators & Supply, Inc. v. CIT Tech. Fin. Servs.*, 536 F.3d 663, 668 (7th Cir.

2008)).  "A complaint has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  With these standards

in mind, the court turns to the Policy provisions at issue.

## II.    Policy Provisions

Plaintiffs were insured under two separate Businessowners Policies providing

coverage for their various hotel properties which were effective as of August 1, 2019—

the Union Insurance Company of Providence, Policy No. 5T4-85-44-20 and the Emcasco

Insurance Company of Providence, Policy No. 5W4-85-44-2 ("Policy"[1]).  In relevant

part, the Policy provides:

### SECTION I – PROPERTY

#### A.    Coverage

---

[1] Because the relevant language in the Policies is identical, the court will refer to them as if there were a single policy and only cite to the Policy submitted into evidence as Filing No. 11-1.

We will pay for direct physical loss of or damage to Covered Property . . . caused by or resulting from any Covered Cause of Loss.

> **3.     Covered Causes of Loss**
>
> Direct physical loss unless the loss is excluded or limited under Section I – Property.

(Policy at 16).

The Policy also provides "Additional Coverages" for "Business Income" and "Extra Expense" as follows:

> **5.     Additional Coverages**
>
> *   *   *
>
> **f.     Business Income**
>
> > **(1)     Business Income**
> >
> > > **(a)**     We will pay for the actual loss of Business Income you sustain due to the necessary suspension of your "operations" during the "period of restoration."  The suspension must be caused by direct physical loss of or damage to property at the described premises.  The loss or damage must be caused by or result from a Covered Cause of Loss . . . .
> > >
> > > **(b)**     We will only pay for loss of Business Income that you sustain during the "period of restoration" and that occurs within 12 consecutive months after the date of direct physical loss or damage . . . .
> >
> > **(2)     Extended Business Income**
> >
> > > **(a)**     If the necessary suspension of your "operations" produces a Business Income loss payable under this policy, we will pay for the actual loss of Business Income you incur during the period . . . .

    **(b)**    Loss of Business Income must be caused by direct physical loss or damage at the described premises caused by or resulting from any Covered Cause of Loss.

(*Id.* at 21-22).

The term "period of restoration" is defined in the Policy as the period of time that:

    **(1)**    Begins:

        **(a)**    72 hours after the time of direct physical loss or damage for Business Income Coverage; or

        **(b)**    Immediately after the time of direct physical loss or damage for Extra Expense Coverage;

    caused by or resulting from any Covered Cause of Loss at the described premises; and

    **(2)**    Ends on the earlier of:

        **(a)**    The date when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality, or

        **(b)**    The date when business is resumed at a new permanent location.

(*Id.* at 48-49).

    **g.**    **Extra Expense**

    **(1)**    We will pay necessary Extra Expense you will incur during the "period of restoration" that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss . . . .

    **(2)**    Extra Expense means expense incurred:

        **(a)**    To avoid or minimize the suspension of business and to continue "operations" . . .

> > **(b)**    To minimize the suspension of business if you cannot continue "operations."
> >
> > \*    \*    \*
>
> **(4)**    We will only pay for Extra Expense that occurs within 12 consecutive months after the date of direct physical loss or damage.  This Additional Coverage is not subject to the Limits of Insurance of Section I – Property.

(*Id.* at 23).

The Policy also provides for Civil Authority Coverage.

> **i.**    **Civil Authority**
>
> When a **Covered Cause of Loss** causes damage to property other than property at the described premises, we will pay for the actual loss of Business Income you sustain and necessary Extra Expense caused by action of civil authority that prohibits access to the described premises, provided that both of the following apply:
>
> **(1)**    Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and
>
> **(2)**    The action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(*Id.* at 24).

Lastly, the Policy contains a Virus or Bacteria exclusion.

> **B.**    **Exclusions**
>
> **1.**    We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause

6

or event that contributes concurrently or in any sequence to the loss. These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area.

\*   \*   \*

**j.    Virus or Bacteria**
**(1)**    Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

(*Id.* at 35).

## III.    Factual Background

Plaintiffs are engaged in the business of hotel development and management. (Filing No. 11, Am. Compl. ¶ 6). They operate various hotel properties located in Illinois, Indiana, Missouri, and Texas. (*Id.* ¶ 8).

On March 11, 2020, the World Health Organization characterized the spread of the novel coronavirus, COVID-19, as a pandemic. (*Id.* ¶ 18). In response to the pandemic and threatened spread of COVID-19, governmental units across the United States including Indiana, Illinois, Missouri, and Texas, issued Executive Orders placing restrictions on travel and requiring certain businesses to close to the public or operate under significant restraints. (*See id.* ¶ 19). Executive Orders issued in Indiana, Illinois, Missouri, and Texas declared hotels and motels were essential businesses and were not required to close to the public. (*See* Filing No. 21-1, Denial Letters at 3, 15, 26, 39). Plaintiffs allege that due to the Executive Orders, customers were prevented from traveling to and staying at Plaintiffs' hotels. (Am. Compl. ¶ 19). As a result, Plaintiffs have suffered a substantial loss of revenue. (*Id.* ¶ 22).

On March 23, 2020, Plaintiffs submitted a claim to Defendants, requesting coverage for its business interruption losses under the Policy.  (*Id.* ¶ 23).  Defendants created four separate claim numbers based upon the state where the hotels were physically located (collectively the "claim").  (*See* Denial Letters).  The following day, Plaintiffs' CEO received several calls from Defendants informing him that they did not intend to cover Plaintiffs' losses, and that he should expect a denial in the coming weeks. (Am. Compl. ¶ 24).

On April 24, 2020, Plaintiffs' claim was denied, and four separate denial letters were issued outlining the investigation and the reasons for denial of each claim.  (*Id.*). Defendants concluded that no claim had been submitted for physical loss of or damage to any covered property, dependent property, or nearby property and therefore, there was no covered loss under the Policy.  (*Id.*).  Defendants further explained that to the extent Plaintiffs' alleged losses were caused by or related to a virus, including COVID-19, such loss was expressly excluded as a Covered Cause of Loss pursuant to the Virus or Bacteria Exclusion.  (*Id.*).

## IV.   Discussion

The parties agree that Indiana law governs their dispute.  Under Indiana law, the interpretation of an insurance policy is a question of law.  *Buckeye State Mut. Ins. Co. v. Carfield*, 914 N.E.2d 315, 318 (Ind. Ct. App. 2009) (citing *Briles v. Wausau Ins. Co.*, 858 N.E.2d 208, 213 (Ind. Ct. App. 2006)).  When interpreting an insurance policy, the court's goal is to "ascertain and enforce the parties' intent as manifested in the insurance

8

contract." *Id.*  If the policy language is clear and unambiguous, it should be given its plain and ordinary meaning.  *Id.*  The court construes the insurance policy as a whole and considers all the provisions of the contract and not just the individual words, phrases, or paragraphs.  *Briles*, 858 N.E.2d at 213.  A court must accept an interpretation of the contract language that harmonizes the provisions, rather than one that supports conflicting versions of the provisions.  *Id.*  As such, a court "should construe the language of a contract so as not to render any words, phrases, or terms ineffective or meaningless." *Mahan v. Am. Standard Ins. Co.*, 862 N.E.2d 669, 676 (Ind. Ct. App. 2007).

### A.    Count I, Breach of Contract

Plaintiffs allege Defendants breached the insurance contract by denying them coverage for business income losses associated with the interruption of their business operations due to the spread of COVID-19.  Specifically, they allege:

21.    The continuous presence of COVID-19 on or around Plaintiffs' premises, and/or the threat thereof, has rendered the premises unsafe and unfit for their intended use and therefore cause physical damage or loss to Plaintiffs' property under the Policy.

22.    The applicable closures and restrictions were issued in direct response to these dangerous physical conditions, or the threat thereof, and prohibited and/or severely restricted the public from accessing Plaintiffs' businesses, thereby causing the necessary limitation or suspension of Plaintiffs' operations and triggering coverage under the Policy.

(Am. Compl. ¶¶ 20-21).

### 1.    Direct Physical Loss of or Damage to Property

Plaintiffs first seek coverage under the Business Income and Extra Expense provisions of the Policy, arguing that the business losses associated with COVID-19 and the related Executive Orders—what Plaintiffs phrase as "loss of use" of property—constitute a direct physical loss of property.  Defendants disagree and argue that to establish a direct physical loss of property, Plaintiffs must allege a distinct and physical alteration of the property.  (*See* Denial letter for MGH Hotels at 5 ("'Direct physical loss or damage' generally requires, at a minimum, a distinct and demonstrable physical alteration of the business property.")).

The Policy extends coverage to "direct physical loss of or damage to Covered Property."  (Policy at 16).  Although the phrase "direct physical loss of or damage to" is not defined in the Policy, the court finds its meaning is not ambiguous.  The term "direct" signals immediate or proximate cause.  *Universal Image Prods., Inc. v. Chubb Corp.*, 703 F.Supp.2d 705, 709 (E.D. Mich. 2010).  The term "physical" is defined as something which has a "material existence: perceptible especially through the senses and subject to the laws of nature."  Merriam–Webster, available at http://www.merriam-webster.com/ (last visited March 1, 2021); *see also* Couch on Insurance § 148:46 (3d Ed. 1998) ("The requirement that the loss be 'physical,' given the ordinary definition of the term, is widely held to exclude alleged losses that are intangible or incorporeal and, thereby, to preclude any claim against the property insurer when the insured merely suffers a detrimental economic impact unaccompanied by a distinct, demonstrable, physical alteration of the property.").  Thus, "[t]he words 'direct' and 'physical,' which modify the word 'loss'

ordinarily connote actual demonstrable harm of some form to the premises itself." *Sandy Point Dental, PC v. The Cincinnati Ins. Co.*, --- F.Supp.3d ---, 2020 WL 5630465, at *2 (N.D. Ill. Sept. 21, 2020); *see also Port Auth. of New York & New Jersey v. Affiliated FM Ins. Co.*, 311 F.3d 226, 235 (3rd Cir. 2002) ("In ordinary parlance and widely accepted definition, physical damage to property means 'a distinct, demonstrable, and physical alteration' of its structure.") (quoting 10 Couch on Insurance § 148.46 (3d Ed. 1998)).

An examination of the Policy as a whole supports Defendants' interpretation.  The "period of restoration" applicable to both Business Income and Expense coverage "begins 72 hours after the time of direct physical loss or damage . . . " and ends "when the property at the described premises should be repaired, rebuilt or replaced with reasonable speed and similar quality."  (Policy at 48-49).  "The words 'rebuild,' 'repair' and 'replace' all strongly suggest that the damage contemplated by the Policy is physical in nature." *Mudpie Inc. v. Travelers Casualty Ins. Co. of Am.*, 4:20-cv-03213, 2020 WL 5525171, at *4 (N.D. Cal. Sept. 4, 2020) (quoting *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F.Supp.2d 280, 287 (S.D.N.Y. 2005)).  Read together, the court finds the phrase "direct physical loss" refers to a loss that requires the insured to repair, rebuild, or replace property that has been tangibly, physically altered – not the insured's loss of use[2] of that property.

---

[2] Plaintiffs cite *Cook v. Allstate Ins. Co.*, 48 D02-0611-PL-01156, 2007 Ind. Super. LEXIS 32 (Madison Super. Ct. Nov. 30, 2007) for the proposition that "a condition that renders property unsuitable for its intended use constitutes a 'direct physical loss, even where some utility remains[.]'" *Id.* at *9. In *Cook*, the insured's home was infested with brown recluse spiders which the insured was unable to remove after several attempts to treat the property. *Id.* at 1-2.  He was forced to move his family out of the home. *Id.* at 2.  The court found, in part, that the presence

Here, Plaintiffs have continued to operate their hotels since March 2020. Their losses stem from the governmental efforts to slow the spread of COVID-19 and not from a direct physical loss of their property that requires they repair, rebuild, or replace their property. Therefore, because Plaintiffs have failed to plead a direct physical loss, they are not entitled to coverage under the Business Income and Extra Expense provisions of the Policy.

### 2. Civil Authority Provision

Plaintiffs also seek coverage under the Civil Authority provision. For coverage to apply, there must be (i) damage to property other than the insured's property caused by a Covered Cause of Loss; (ii) resulting in a civil authority prohibiting access to the insured's property; (iii) access to the area immediately surrounding the damaged property is prohibited as a result of the damage and the insured's property is within one mile of the damaged property; and (iv) the civil authority action is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage. (Policy at 24).

As Defendants correctly observe, Plaintiffs have not alleged that COVID-19 and the related Executive Orders caused a direct physical loss to property other than the

---

of the spiders constituted a "sudden and accidental direct physical loss" to the property. *Id.* at *8. The court reasoned that spiders "living, breeding and hunting on and within surfaces of the Home are a physical condition that renders the Home unsuitable for its intended use." *Id.* at *9. This case is distinguishable from the present case. Unlike the insured in *Cook*, Plaintiffs have not abandoned any property and continue to operate their hotels. Thus, there has been no loss of use because the hotels have remained open. Furthermore, Plaintiffs blame their losses on Executive Orders issued to stem the spread of COVID-19, not a physical condition like a spider infestation in the home.

Plaintiffs' property.  Failure to satisfy this requirement alone warrants dismissal of this claim.

As to the second prong, Plaintiffs acknowledge they were deemed essential businesses per governmental orders and were open for business.  Plaintiffs attempt to create ambiguity in the term "prohibit" by arguing that it has several dictionary definitions—"forbid" and "hinder."  (Filing No. 27, Resp. at 10-11).  "Hinder" is defined as "to cause delay, interruption, or difficulty in" and "to be an obstacle or impediment." https://www.dictionary.com/browse/hinder (last visited March 4, 2021).  Plaintiffs thus argue that "Government Actions 'hindered'" Plaintiffs' businesses.

In *Sandy Pointe Dental PC v. The Cincinnati Insurance Company*, the plaintiff dental office sought coverage under a civil authority provision which only applied if an order of civil authority "prohibits access to the premises."  2020 WL 5630465, at *3.  The plaintiff argued that the Illinois Executive Orders which "left dental offices able to do emergency and non-elective work, but not routine work" forced the dental office to shut down.  *Id.* at *1.  Applying the plain and ordinary meaning of the term "prohibit," the Northern District of Illinois rejected Plaintiffs' argument and found that "no order in Illinois prohibits access to plaintiff's premises."  *Id.* at *3.  The court explained: "[P]laintiff concedes that dental offices were deemed essential businesses for emergency and non-elective work.  Consequently, plaintiff has failed to allege that access to its premises was prohibited by government order, and its claim for civil authority coverage fails."  *Id.*  Similarly here, Plaintiffs have failed to allege that access to their premises was

*prohibited* by government order.  Therefore, Plaintiffs claim for civil authority coverage fails as a matter of law.

### 3.     Virus and Bacteria Exclusion

Defendants argue that even if the Plaintiffs had sufficiently alleged a direct physical loss, their claim would still be excluded under the Virus Exclusion.  Plaintiffs respond that they were not damaged by COVID-19; rather, "they were damaged as a result of Governmental Actions requiring individuals to 'refrain from non-essential travel' . . . [which] caused 'the necessary limitation or suspension of Plaintiffs' operations.'" (Resp. at 8).

The Virus Exclusion excludes from coverage loss or damage caused directly or indirectly by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease."  (Policy at 35).  The exclusion applies "regardless of any other cause or event that contributed concurrently or in any sequence to the loss."  (*Id.*).

The court finds Plaintiffs have pleaded that COVID-19 is in fact the reason for the Executive Orders being issued and the underlying cause of Plaintiffs' losses.  While the Executive Orders technically impacted Plaintiffs' business operations, the Orders only came about because of the spread of COVID-19.  *See Diesel Barbershop, LLC v. State Farm Lloyds*, 479 F.Supp.3d 353, 361 (W.D. Tex. 2020) (holding Virus Exclusion barred plaintiffs' claims because it was the presence of COVID-19—not executive orders finding barbershops "non-essential"—that was primary root cause of Plaintiffs' businesses

temporarily closing).  Thus, even if the court found a direct physical loss to the Plaintiffs'

properties, the Virus Exclusion applies and bars Plaintiffs' claims.

### B.    Count II, Bad Faith

Next, Plaintiffs allege Defendants engaged in bad faith by "summarily den[ying]

Plaintiffs' request for coverage without conducting a reasonable and adequate

investigation of Plaintiffs' claim" and by deceiving Plaintiffs about the scope of the

Policy's coverage.  (Am. Compl. ¶¶ 35, 38).

Under Indiana law, insurers have a duty to deal with an insured in good faith, and

a violation of that duty is a tort giving rise to a cause of action for bad faith.  *Erie Ins. Co.*

*v. Hickman,* 622 N.E.2d 515, 519 (Ind.1993). !Examples of bad faith acts by an insurer

include: "(1) making an unfounded refusal to pay policy proceeds; (2) causing an

unfounded delay in making payment; (3) deceiving the insured; and (4) exercising any

unfair advantage to pressure an insured into a settlement of his claim."  *Id.*

"[W]hether [the insurer] breached the covenant of good faith and fair dealing

necessarily requires that the factfinder determine whether it wrongfully denied coverage."

*HemoCleanse, Inc. v. Philadelphia Indem. Ins. Co.*, 831 N.E.2d 259, 264 (Ind. Ct. App.

2005); *see also Freidline v. Shelby Ins. Co.*, 774 N.E.2d 37, 40 (Ind. 2002) ("To prove

bad faith, the plaintiff must establish, with clear and convincing evidence, that the insurer

had knowledge that there was no legitimate basis for denying coverage.").  As

Defendants made the correct decision to deny coverage, Plaintiffs' bad faith claim

predicated on a lack of diligent investigation necessarily fails.

Plaintiffs also claim they were deceived by Defendants' agent.  Specifically, they allege that on July 15, 2019, while renewing the Policy, MHG Hotels' CEO, Sanjay Patel, was told by Defendants' agent that the Policy would cover all business interruptions. (Am. Compl. ¶ 9).  To the extent this allegation states a claim for bad faith—indeed, a quick read of the Policy reveals that the Policy does not cover *all* business interruptions[3]—Plaintiffs must still show that Defendants' agent made those statements with a culpable state of mind.

In Indiana, a "bad faith claim is composed of an objective element (such as the lack of a reasonable basis to deny a claim) and a subjective element (such as knowledge of the lack of a reasonable basis to deny a claim)."  *Clifford v. State Farm and Cas. Co.*, No. 3:10 CV 221, 2011 WL 2326969, at *14 (N.D. Ind. June 7, 2011).  "A finding of bad faith requires evidence of a state of mind reflecting dishonest purpose, moral obliquity, furtive design, or ill will . . . A bad faith determination inherently includes an element of culpability."  *Colley v. Indiana Farmers Mut. Ins. Grp.,* 691 N.E.2d 1259, 1261 (Ind. Ct. App. 1998) (citing *Johnston v. State Farm Mut. Auto. Ins.,* 667 N.E.2d 802, 805 (Ind. Ct. App. 1996)); *see also Auto-Owners Ins. Co. v. C&J Real Estate, Inc.*, 996 N.E.2d 803, 805-06 (Ind. Ct. App. 2013) ("[P]roving bad faith amounts to showing more than bad judgment or negligence: it implies the conscious doing of wrong because of dishonest

---

[3] As a general proposition, an insured has a duty to read and understand the insurance policy. *Safe Auto Ins. Co. v. Enterprise Leasing Co. of Indianapolis, Inc.*, 889 N.E.2d 392, 398 (Ind. Ct. App. 2008).  "[T]he insured may be relieved of the duty to read and understand the policy where an agent ha[s] made representations about the provisions of the policy."  *Anderson Mattress Col., Inc. v. First State Ins. Co.*, 617 N.E.2d 932, 940 (Ind. Ct. App. 1993); *see also id.* n. 8 (explaining the issue has arose in prior cases dealing with actual or constructive fraud).

16

purpose or moral obliquity . . . . [I]t contemplates a state of mind affirmatively operating with furtive design or ill will.") (quoting *Oxendine v. Public Serv. Co.*, 423 N.E.2d 612, 620 (Ind. Ct. App. 1980)).

Here, Plaintiffs simply allege Defendants acted "with malice, fraud, gross negligence and oppressiveness." (Am. Compl. ¶ 38). This allegation is conclusory; it fails to provide a sufficient factual basis to support an inference that the Defendants acted with a culpable state of mind. *See Family Christian World, Inc. v. Philadelphia Indem. Ins. Co.*, No. 2:15-CV-102, 2015 WL 6394476, at *8 (N.D. Ind. Oct. 21, 2015) (dismissing bad faith claim where the claim was "based on speculation and conclusory allegations that lack sufficient factual support evidencing the type of 'dishonest purpose, moral obliquity, furtive design, or ill will' necessary to sustain such a claim"). The court therefore finds Plaintiffs fail to state a claim against Defendants for bad faith.

### C.    Count III, Fraudulent Misrepresentation

A claim for fraudulent misrepresentation requires a plaintiff to establish a (i) material misrepresentation of past or existing facts by the party to be charged (ii) which was false (iii) which was made with knowledge or reckless ignorance of the falseness (iv) was relied upon by the complaining party and (v) proximately caused the complaining party injury. *Johnson v. Wysocki*, 990 N.E.2d 456, 460-61 (Ind. 2013). Federal Rule of Civil Procedure 9(b) creates a heightened pleading standard for fraud claims and requires that a party must state with particularity the circumstances constituting fraud or mistake. "While the precise level of particularity required under Rule 9(b) depends on the facts of

the case, the pleading 'ordinarily requires describing the who, what, when, where, and how of the fraud.'"  *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quoting *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 615 (7th Cir. 2011)).

This claim is based on Defendants' agent's representations to Mr. Patel regarding the scope of coverage under the Policy.  (*See* Am. Compl. ¶ 9).  Specifically, Mr. Patel was told that the Policy would protect and insure Plaintiffs against damages incurred as a result of government closure and/or travel restriction orders; the Policy would protect and insure Plaintiffs against damages incurred as a result of a viral pandemic; the Policy would protect and insure Plaintiffs against losses incurred as a result of an interruption to its business operations; and that Defendants would promptly pay such a claim if Plaintiffs made a claim for those type of losses.  (*Id.* ¶ 41).  Plaintiffs further allege these representations were false, Defendants knew they were false and never intended to provide Plaintiffs with such coverage, Plaintiffs relied on these representations to their detriment and have suffered damages.  (*Id.* ¶¶ 42, 43, 46, 48).

Defendants argue Plaintiffs' claim does not identify who made the alleged misrepresentation, the time, place, and content of the misrepresentations, and the method by which the misrepresentation was communicated to Plaintiffs.  As shown above, Plaintiffs did include the content of the alleged misrepresentations and the date on which they were communicated.  But Plaintiffs did not adequately identify the individual who made those alleged misrepresentations.  As Defendants correctly note, they need that

information to properly evaluate Plaintiffs' allegations.  The court therefore finds

Plaintiffs have failed to plead their fraudulent concealment claim with particularity.

## V.     Conclusion

For the reasons set forth above, the court **GRANTS** Defendants' Motion to

Dismiss.  (Filing No. 20).  Plaintiffs are granted leave to amend Count III.  Such

amendment is due on or before **March 29, 2021**.

**SO ORDERED** this 8th day of March 2021.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.